CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Christopher A. Seabock, Esq., SBN 279640
<u>Mail</u>: PO Box 262490
San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
ChrisS@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shirley Lindsay,**<br><br>　　　Plaintiff,<br><br>　v.<br><br>**Grupo Glemka Commercial, LLC**, a California Limited Liability Company;<br>**Bedder Corp**, a California Corporation; and Does 1-10,<br><br>　　　Defendants. | **Case No**. 2:18-CV-05136-GW-MRW<br><br>**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Shirley Lindsay complains of Defendants Grupo Glemka Commercial, LLC, a California Limited Liability Company; Bedder Corp, a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. She suffers from arthritis (osteoarthritis of multiple joints; spinal stenosis of the lumbar spine; and essential hypertension) of her hands, knees, and hips. She uses both

1

a cane and wheelchair for mobility.

2. Defendant Grupo Glemka Commercial, LLC owned the real property located at or about 12680 Foothill Blvd., Sylmar, California, in July 2017.

3. Defendant Grupo Glemka Commercial, LLC owns the real property located at or about 12680 Foothill Blvd., Sylmar, California, currently.

4. Defendant Bedder Corp owned the Bedder Mattress located at or about 12680 Foothill Blvd., Sylmar, California, in July 2017.

5. Defendant Bedder Corp owns the Bedder Mattress located at or about 12680 Foothill Blvd., Sylmar, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to Bedder Mattress in July 2017 to shop.

11. Bedder Mattress is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of Bedder Mattress.

13. Unfortunately, there were no van-accessible parking spaces in the parking lot where Bedder Mattress is located.

14. The only parking space designed and reserved for persons with disabilities in the parking lot where Bedder Mattress is located is a standard stall that measures 96 inches in width. The access aisle is 60 inches in width. This stall is not van accessible.

15. Additionally, the standard handicap parking space did not have the required "NO PARKING" lettering in the access aisle.

16. On information and belief, plaintiff alleges that there used to be a van-accessible parking space in the parking lot where Bedder Mattress is located. Unfortunately, the parking space has been allowed to fade or get paved over.

17. Currently, there is no van-accessible parking.

18. The Defendants had no policy or plan in place to make sure that the parking space reserved for persons with disabilities remained useable prior to plaintiff's visit.

19. The Defendants have no policy or plan in place to make sure that the parking space reserved for persons with disabilities remain useable, currently.

20. Defendants have failed to maintain in operable working condition those

features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

21. Plaintiff personally encountered these barriers.

22. These inaccessible conditions denied the plaintiff full and equal access and caused her difficulty, discomfort, and embarrassment.

23. Paths of travel are another one of the facilities, privileges and advantages offered by defendants to patrons of Bedder Mattress.

24. Meanwhile, and even though the plaintiff did not confront the barrier, due to the configuration of the merchandise at Bedder Mattress, the paths of travel were less than 36 inches in width. In fact, the narrowest pathway is 14 inches wide.

25. Currently, due to the configuration of the merchandise at Bedder Mattress, the paths of travel are less than 36 inches in width.

26. Furthermore, although Plaintiff did not personally confront all of the following barriers, Plaintiff alleges that the path of travel, parking, and the merchandise aisles are also not accessible to wheelchair users in the ways described below.

27. The path of travel from the public sidewalk has a gap which is greater than ½ inch opening.

28. The path of travel at the tenant entry has a loose rug so the ground surface is not firm or stable.

29. The International Symbol of Accessibility and van-accessible signs are not reflectorized.

30. The van-accessible parking space has slopes greater than 2.083% in all directions.

31. The associated access aisle has slopes greater than 2.083% in all directions.

31. The accessible parking space surface has openings with greater than ¼-

4

inch vertical differential and ½-inch cracks.

32. The access aisle does not have a complete blue border on all sides.

33. Entrances are one of the facilities, privileges, and advantages offered by Defendants to patrons of Bedder Mattress.

34. The clear floor space at the entrance door does not have a firm or stable flooring due to a loose walk-off mat.

35. The computer desk has less than the minimum 30-inch clearance width below it.

36. Merchandise aisles are one of the facilities, privileges, and advantages offered by Defendants to patrons of Bedder Mattress.

37. However, several one-sided merchandise aisles have less than 36 inches minimum clear width.

38. Additionally, several two-sided merchandise aisles have less than 44 inches minimum clear width.

39. Plaintiff plans to return and patronize Bedder Mattress but is deterred from visiting until the defendants remove the barriers.

40. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

41. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

42. For example, there are numerous paint/stripe companies that will stripe a van accessible parking stall and access aisle and install proper signage on short notice and for a modest price, sometimes as low as $300, in full

compliance with federal and state access standards.

43. Plaintiff is deterred from returning and patronizing Bedder Mattress because of her knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize Bedder Mattress as a customer once the barriers are removed.

44. Given the obvious and blatant nature of the violations and barriers alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, she can sue to have all barriers that relate to her disability removed regardless of whether she personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

45. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

46. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices,

or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

47. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

48. Here, the failure to provide a van accessible parking space is a violation of the ADA.

49. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. The minimum clear width of an accessible route shall be 36 inches. 1991 Standards § 4.3.3.

50. Here, the failure to provide an accessible path of travel is a violation of the ADA.

51. Parking spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted.

52. Openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch diameter except as allowed in 407.4.3, 409.4.3, 410.4, 810.5.3 and 810.10. Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel. 2010 Standards § 302.3; (California Business Code ("CBC") § 11B-302.3. Here, the gap on the path of travel from the public sidewalk is 3 ½ inches at the gate track. This is a violation of the law.

53. Here, the accessible space surface has openings greater than ¼ inch vertical differential and 1/2 inch cracks. This is a violation of the law.

54. Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302. 2010 Standards § 302.1; CBC § 11B-302.1. Here, the ground surface on the path of travel at the tenant entrance is not firm or stable due to a loose rug. This is a violation of the law.

55. Here, the door clear floor space at the entrance has a loose walk-off mat because of which the flooring is not firm or stable. This is a violation of the law.

56. Symbols of accessibility and their background shall have a non-glare finish. Symbols of accessibility shall contrast with their background with either a light symbol on a dark background or a dark symbol on a light background. 2010 Standards § 703.7.1. Parking identification signs shall be reflectorized with a minimum area of 70 square inches. CBC § 11B-502.6.1. Here, the ISA and van accessible sign is not reflectorized. This is a violation of the law.

57. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards § 502.4; CBC § 11B-

502.4. Here, the van accessible parking space has a cross slope of 3.1% in center and a cross slope of 2.6% at foot. This is a violation of the law.

58. Here, the access aisle has cross slope of 2.8% in center, running slope of 3.5% in center and a running slope of 4.7% at end. This is a violation of the law.

59. Access aisles shall be marked so as to discourage parking in them. 2010 Standards § 502.3.3. Access aisles shall be marked with a blue painted borderline around their perimeter. The area within the blue borderlines shall be marked with hatched lines a maximum of 36 inches on center in a color contrasting with that of the aisle surface, preferably blue or white. The words "NO PARKING" shall be painted on the surface within each access aisle in white letters a minimum of 12 inches in height and located to be visible from the adjacent vehicular way. Access aisle markings may extend beyond the minimum required length. CBC § 11B-502.3.3. Here, the access aisle does not have a blue border at its head. This is a violation of the law.

60. Where work surfaces are provided for use by people other than employees, at least 5 percent shall comply with 902. 2010 Standards § 226.1; CBC § 11B-226.1. A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided. 2010 Standards § 902.2; CBC § 11B-902.2. Here, the work desk at end of center aisle has a minimum clear width of 28 ½ inches. This is a violation of the law.

61. Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches minimum. 2010 Standards § 403.5.1. The clear width for aisles shall be 36 inches minimum if serving elements on only one side, and 44 inches minimum if serving elements on both sides. CBC § 11B-403.5.1, exception 4.

62. Here, several one-sided merchandise aisles have less than 36 inches

minimum clear width. This is a violation of the law.

63. Additionally, several two-sided merchandise aisles have less than 44 inches minimum clear width. This is a violation of the law.

64. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

65. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

66. Given its location and options, plaintiff will continue to desire to patronize Bedder Mattress but she has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

67. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

68. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

69. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities,

privileges, or services offered.

70. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: February 6, 2019         CENTER FOR DISABILITY ACCESS

By: /s/ Christopher A. Seabock

Christopher A. Seabock
Attorney for plaintiff